## TEMPLETON *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF NEWTON.

[No. 6,500. Filed October 14, 1909.]

1. APPEAL.—*Agreed Case.*—*How Determined.*—An agreed case, under §579 Burns 1908, §553 R. S. 1881, is determined *de novo* on appeal to the Supreme or Appellate Court. p. 382.
2. APPEAL.— *Jurisdiction.*— *Drains.*— *Mandamus.*—The jurisdiction of appeals in cases of drainage and mandamus is in the Supreme Court. p. 382.
3. DRAINS.—*Issuance of Bonds.*—*Mandamus.*—*Appeal.*—An appeal in an action to compel a board of commissioners to issue bonds for the payment of the cost of constructing a public drain, does not relate to the establishment of the drain, and is therefore not transferable to the Supreme Court as a drainage case, there being no appeal from an order refusing to issue such bonds. p. 382.
4. DRAINS.—*Bonds.*—*Boards of Commissioners.*—*Mandamus.*—Mandamus is the appropriate remedy for a contractor where the board of commissioners refuses to issue bonds in payment of the cost of constructing a public drain. p. 385.
5. MANDAMUS.— *Appeal.*— *Jurisdiction.*—*Drains.*—The jurisdiction of an appeal in an agreed case which, if the action be successful, must result in a mandate against defendant board of commissioners requiring such board to issue bonds in payment of the cost of constructing a public drain, is in the Supreme Court. p. 385.

From Newton Circuit Court; *Charles W. Hanley,* Judge.

Action by Henry V. Templeton against the Board of Commissioners of the County of Newton. From a judgment for defendant, plaintiff appeals. *Transferred to the Supreme Court.* (For decision on transfer, see 173 Ind. 226.)

*T. B. Cunningham,* for appellant.

*John Higgins* and *Foltz & Spitler,* for appellee.

MYERS, J.—The parties to this appeal presented to the court below facts upon which their rights were to be determined, involving the question whether the board of commissioners should issue additional bonds to pay for work done by appellant in the construction of a certain ditch.

No pleadings were filed, and it is apparent from the rec-

ord that the parties proceeded under §579 Burns 1908, §553 R. S. 1881, in the preparation and submission to the court of what is known as an "agreed case."

The errors assigned by the appellant call in question the judgment of the court upon the facts thus submitted.

In ordinary appeals appellate tribunals will indulge all reasonable presumptions in favor of the regularity of the proceedings and judgment of the trial court, but in an "agreed case" the rule is otherwise, and the questions presented by the record are to be determined *de novo*. *Day* v. *Day* (1885), 100 Ind. 460, 462; *Robbins* v. *Swain* (1893), 7 Ind. App. 486.

This controversy grew out of a proceeding for drainage, and was based upon what is known as the "five mile law." Acts 1891, p. 455, §5690 *et seq.* Burns 1901.

By legislative enactment the jurisdiction on appeal of proceedings to establish drains, and cases of mandate, is in the Supreme Court. Acts 1907, p. 237, §1, §1392 Burns 1908.

The facts, in substance, are that in May, 1904, an interested landowner filed a petition with the board of commissioners, praying for an order to clean, deepen and widen certain drains which had theretofore been established and constructed under the drainage laws of this State. Thereafter such proceedings were had that viewers were appointed who reported in favor of the improvement, and the same was ordered by the board. Said viewers, with an engineer appointed by the board, were directed to proceed, and did proceed, as provided in section three of said act of 1891 (§5692, *supra*). The viewers thus ordered to make the survey, etc., fixed and reported the outlet of the main ditch at station 341 instead of station 319, as at first reported.

The proceedings and procedure thereafter are shown to have been regular and as provided for by said act in such cases, and the report of the board fixing said outlet at station

341 was adopted and made a matter of record, except that part of the engineer's specifications showing said outlet to be at station 341 instead of at station 319. This omission is shown to have been through inadvertence and mistake, and was not discovered until about the time appellant had completed the ditch up to and including station 319, to which point the several allotments had been, after notice, duly sold to appellant and covered by a contract regularly entered into. Upon the discovery of the aforesaid error a petition by a landowner affected by said improvement was filed with the board, asking that its records be amended to speak the truth, showing stations 320 to 341, both inclusive, which had been reported by the viewers and adopted by the board, but which had been omitted from the board's records, and that an additional agreement be entered into, whereby the appellant should continue the ditch to the reported outlet at the original contract price of ten cents per cubic yard. All the parties affected by the improvement being before the board, and no objections offered, and the contractor appearing and consenting to the correction and agreeing to execute a supplemental contract for the additional construction upon the same basis as the original contract, and the board being "duly advised in the premises, and it sufficiently appearing that the entry made herein on August —, 1904, through inadvertence, neglect and mistake, did not express the order and judgment of the board as ordered and given by the board on said day, it is therefore ordered that said entry and judgment entered on said August —, 1904, be and the same is hereby amended and corrected to read as follows, by adding to the tabulated statement of the engineer on page 460 of Book I, 'five mile drainage record,' the tabulated statement as follows." This statement shows number of stations, commencing at 320 and ending at 341, surface elevation, grade, depth of cut, width at bottom, width at top, number of cubic yards, etc., together with total estimated cost of construction of each station; and it is also ordered that the engineer in charge of

the construction enter into and make a supplemental contract with appellant in the additional bond as required by law, to construct said additional sections.

It next appears that the engineer in charge of the construction of said improvement filed his final report, showing that said improvement had been fully completed according to the plans and specifications of the viewers' report, including the additional work done between stations 319 and 341, and showing the amount due said contractor. It also appears that the total estimated cost of the entire work was $19,542.10; that the total cost of the improvement, including cost of construction, location, damages and bridges, and including the work between stations 319 and 341, was $19,-052.67; that bonds had been issued and sold, the proceeds of which were sufficient to pay in full all the various items of costs and expenses in the making of said improvements, except $103.06, balance due on the original contract, and $542.30, due to appellant on account of work done in constructing the ditch between stations 319 and 341, and for the payment of said last named amounts said board of commissioners, although demanded by appellant so to do, refused to issue bonds as provided in said act.

From these facts it is clear that no question is presented relating to the establishment of a ditch; that point in the proceedings was passed without controversy. The question for decision, as we have said, is, Shall the board of commissioners issue bonds, whereby a sum of money may be secured sufficient to pay the balance due for the work in the construction of the ditch? There is no statute authorizing an appeal from the action of the board of commisioners in refusing to issue bonds for the purpose of raising money to pay for the construction of drains under said drainage act, which act expressly provides for an appeal from an order of the board of commissioners upon certain matters. §5695, *supra.* But nowhere in said act is provision made for an appeal from a decision of the board in refusing to issue bonds.

The making of an order for a bond issue in such cases is one of the duties imposed upon the board, and for a neglect or refusal to perform that official duty the remedy of the party aggrieved is by mandate. *King* v. *Board, etc.* (1904), 34 Ind. App. 231; *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 55 Am. St. 192; *Manor* v. *State, ex rel.* (1898), 149 Ind. 310; *Board, etc.,* v. *Beaver* (1901), 156 Ind. 450; *Board, etc.,* v. *Conner* (1900), 155 Ind. 484; *State, ex rel.,* v. *Board, etc.* (1894), 136 Ind. 207; 7 Lawson, Rights, Rem. and Prac., §4031.

The judgment of the court upon the merits must, if favorable to appellant, be in the nature of a mandate to the board of commissioners to issue the bonds as required by the statute. In such cases the jurisdiction is in the Supreme Court.

For the reasons before stated, this court is without jurisdiction to pass upon the questions involved in this appeal. It is therefore ordered that it be transferred to the Supreme Court.